# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Thomas Gavaras,

        Plaintiff,

v.

Greenspring Media, LLC,
Hour Acquisition Group, LLC d/b/a
Greenspring Media, LLC, and
Greenspring Media Group, Inc.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 13-3566 ADM/JJK

_____

Susan E. Tegt, Esq., and Daniel J. Ballintine, Esq., Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, MN, for Plaintiff.

Michael Barton, Esq., Theresa Smith Lloyd, Esq., and Courtney Nichols, Esq., Plunkett Cooney, Bloomfield Hills, MI; and, Mary M.L. O'Brien, Esq., and Jacalyn N. Chinander, Esq., Meagher & Geer, PLLP, Minneapolis, MN, for Defendants.

_____

## I. INTRODUCTION

On January 6, 2014, the undersigned United States District Judge heard oral argument on Plaintiff Thomas Gavaras's ("Gavaras") Motion for Temporary Restraining Order [Docket No. 4]. Defendants Hour Acquisition Group, LLC and Greenspring Media Group, Inc. oppose the motion. Although styled as a motion for a temporary restraining order, Gavaras is actually seeking a declaratory judgment that a noncompetition agreement is unenforceable. For the reasons stated below, the noncompetition agreement terms are found to be vague and overbroad.

## II. BACKGROUND

Seventeen years ago, on January 25, 1997, Gavaras signed a noncompetition agreement upon the commencement of his employment with Minnesota Monthly Publications, Inc. ("MN Monthly" or "MMP"). Removal Not. [Docket No. 1] Ex. A, at 4 (the "Complaint"), at 6 ¶ 6.

The terms of the noncompetition agreement state:

> In consideration of your employment, for a period of time commencing upon your employment by [MN Monthly] and ending two (2) years following the date you cease to be an employee of [MN Monthly] for any reason whatsoever, other than if [MN Monthly] fails to fulfill the terms of its <u>written employment agreement</u> effective _____ (the "Non-Compete Period"), you agree to not engage in any activities in competition with [MN Monthly].
>
> This non-compete is specifically restricting your ability to work for MSP Communications or any of its related operations, except if your employment is involuntary [sic] terminated by Minnesota Monthly Publications.
>
> Further, you agree to not disclose sales lists, financial information or other trade secrets of [MN Monthly] to others under any circumstances.

<u>Id.</u> at 17 (the "Noncompete Agreement")(emphasis added). The document also states "this Agreement shall be binding and inure to the benefit of MMP, its successors and assigns." Noncompete Agreement at 18. Gavaras argues that the Noncompete Agreement is vague and overbroad, and thus, unenforceable.

Gavaras accepted at-will employment as a Promotions and Sales Development Manager based on an Employment Proposal offered by MN Monthly. <u>Id.</u> at 19 (the "Employment Proposal"). Gavaras started work at a $40,000 base salary, with "three weeks of vacation in [Gavaras's] first year; four weeks maximum every year following, with the ability to bank vacation days up to a maximum of 320 hours." Employment Proposal at 19-20. MN Monthly also agreed to provide Gavaras "eligibility to join the company's 401(k) plan on July 1, 1998 at a 7.5% dollar-for-dollar match of [his] base salary." <u>Id.</u> Although the Noncompete Agreement refers to a written employment agreement and Gavaras believes his Employment Proposal may be that written agreement, neither party has submitted a signed document to that effect. Gavaras argues, if the Employment Proposal is the written agreement referred to by the Noncompete

2

Agreement, then his employers have violated the terms.

In 2001, Gavaras was promoted to Director of Operations and Marketing, Expositions and Events. Compl. ¶ 15. In 2005, Greenspring Media Group, Inc. ("Greenspring") became Gavaras's employer when it purchased MN Monthly's assets. In July 2013, Hour Acquisition Group, LLC (d/b/a Greenspring Media, LLC) ("Hour") in turn purchased MN Monthly from Greenspring. Barton Aff. [Docket No. 23-2] Ex. 1 (Jamie Flaws Aff.) ¶ 3.

Gavaras's current salary is $68,597 per year. Id. at ¶ 43. Hour claims Gavaras has performed substantially the same duties for it as he did for Greenspring, however under a new title, Director of Event Operations. Id. ¶¶ 27, 43. Gavaras claims he was demoted by Hour and that his responsibilities were largely taken away. Compl. ¶¶ 19-26. Gavaras claims Hour changed his benefits, including reducing his vacation time from four weeks to three weeks, and not allowing him to bank unused vacation hours for future years. He is also no longer receiving a 401(k) matching contribution, a benefit eliminated before Hour became Gavaras's employer. Therefore, Gavaras argues that if the Noncompete Agreement is found valid, then Hour has breached the employment proposal and Gavaras is (he argues) entitled to back pay and benefits. In addition, Gavaras contends that since Hour presented him with a new "Application for Employment (Pre-Employment Questionnaire)" and an I-9 form, he should be treated as a new employee at Hour, not as a continuing employee subject to the seventeen-year-old Noncompete Agreement he signed with a predecessor company two corporate changes from his current employer. Finally, Gavaras claims Hour has discriminated against him on the basis of his age.

Waiting in the wings, the Builders' Association of the Twin Cities ("BATC") is planning a luxury home tour. Gavaras has worked on MN Monthly's annual home tour and BATC has

offered Gavaras a position as Marketing and Education Manager, which presumably will include assisting BATC with its inaugural home tour. BATC has informed Gavaras, however, that it will not hire Gavaras if he is bound by an enforceable noncompetition agreement. Hoping to accept BATC's offer, Gavaras has moved the court to declare the Noncompete Agreement unenforceable in a temporary restraining motion separate from the merits of his remaining employment claims.

### III.  DISCUSSION

**A. Declaratory Judgment**

Minnesota's Uniform Declaratory Judgments Act empowers courts "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Minn. Stat. § 555.01 (2013). Parties to a written contract "may have determined any question of construction or validity" arising under the contract. Id. § 555.02 (2013). But the court has no jurisdiction over a declaratory judgment proceeding unless there is a justiciable controversy. Seiz v. Citizens Pure Ice Co., 290 N.W.2d at 802, 804 (Minn. 1940). "A justiciable controversy exists if the claim (1) involves definite and concrete assertions of right that emanate from a legal source, (2) involves a genuine conflict in tangible interests between parties with adverse interests, and (3) is capable of specific resolution by judgment rather than presenting hypothetical facts that would form an advisory opinion." Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617-18 (Minn. 2007) (citing State ex rel. Smith v. Haveland, 25 N.W.2d 476-77 (Minn. 1946); Seiz, 290 N.W. at 804). Since the construction and effect of a contract are questions of law for the court, Turner v. Alpha Phi Sorority House, 276 N.W.2d 63, 66 (Minn. 1979), and since the parties are clearly contesting the enforceability of the Noncompete

Agreement, this case is properly amenable to declaratory judgment.

**B.  Covenants Not to Compete**

Hour claims a right to enforce the Noncompete Agreement Gavaras signed in 1997 at the beginning of his employment with MN Monthly.

Restrictive covenants are to be strictly construed.  Prow v. Medtronic, Inc., 770 F.2d 117, 120 (8th Cir. 1985).  Minnesota courts have approached noncompetition agreements with "a concern for the average individual employee who as a result of his unequal bargaining power may be found in oppressive circumstances."  Bennett v. Storz Broad. Co., 134 N.W.2d 892, 899 (Minn. 1965).  The Minnesota Supreme Court explained that an employee is selling his labor and in certain circumstances "cannot well afford to raise any objection to any of the terms in the contract of employment offered him, so long as the wages are acceptable."  Id.  For this reason, restrictive covenants are viewed with disfavor.  See Hutchinson Tech. Corp. v. Magnecomp Corp., No. 06-1703, 2006 U.S. Dist. LEXIS 48391, at *7 (D. Minn. July 17, 2006).  However, restrictive covenants ancillary to initial employment are enforceable if they serve a legitimate interest and are no broader than necessary to protect this interest.  Id. (citing Kallok v. Medtronic, Inc., 573 N.W.2d 356, 361 (Minn. 1998)).  The restrictive covenant is carefully scrutinized to see if it is "necessary for the protection of the business or good will of the employer," and if the restriction on the employee is no greater than "necessary to protect the employer's business, regard being had to the nature and character of the employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends."  Bennett, 134 N.W.2d at 899.

The simple reality of this case is the Noncompete Agreement Gavaras signed seventeen

years ago is unclear, vague, overly broad and incomplete.

First, the Noncompete Agreement has a fundamental flaw. Its enforceability is explicitly contingent on "the terms of [MN Monthly's] written employment agreement" with Gavaras. But no such agreement exists. The parties agree Gavaras is an at-will employee. Under Minnesota law, at-will employees are not employed "in the absence of a contract," rather, they are employed "under a contract (oral or written) that is not for a fixed term and that can be terminated by either party." Darke v. Lurie Besikof Lapidus & Co., LLP, 550 F. Supp. 2d 1032, 1038 (D. Minn. 2008). At-will employees are bound by noncompetition agreements ancillary to their initial employment, even if compensation changes over time. See Pine River State Bank v. Mettille, 333 N.W.2d 622, 626 (Minn. 1983). Yet, the Noncompete Agreement in this case necessarily assumes Gavaras is something more than an at-will employee; it references a written agreement that must have definite terms. Otherwise, the language which releases Gavaras from the Noncompete Agreement, should MN Monthly ever fail to honor those terms, makes no sense.

Defendants argue the Employment Proposal is the written employment agreement referenced. But the Employment Proposal only reaffirms the fundamental flaw. The Employment Proposal is an unsigned document informing Gavaras of his starting base salary, starting benefits, and potential future benefits. It also generally describes Gavaras's initial job responsibilities. The Employment Proposal cannot constitute the "written employment agreement" in the Noncompete Agreement because the Employment Proposal does not have concrete terms by which Gavaras can determine when he is bound by the Noncompete Agreement. Hour's own arguments demonstrate this flaw. Hour argues it could not have broken the Employment Proposal because the proposal did not obligate it to pay Gavaras any of the

6

benefits he claims.  Mem. Opp'n [Docket No. 23] 11-12.  Hour argues Gavaras had "eligibility" for 401(k) matching funds, not an enforceable promise for matching funds.  Similarly, Hour argues Gavaras had a "maximum" vacation period, not a guaranteed amount of vacations.  By Hour's own position, the Employment Proposal did not reflect terms, so much as possible benefits meant to entice Gavaras into accepting the job.  Therefore, the Employment Proposal demonstrates that if Gavaras bargained for any concrete employment terms at all, they were not reflected in a written employment agreement.

Even if the Employment Proposal is construed to be the written agreement referenced in the Noncompete Agreement, Gavaras argues that over the course of his employment he stopped receiving the benefits for which he had bargained; therefore, Hour breached the terms of the agreement and Gavaras's Noncompete Agreement is no longer valid as a result.  Hour argues that though Gavaras's compensation changed over the course of his employment, he accepted the changes to his unilateral contract, and is, therefore, bound to the new contract terms.  See Pine River, 333 N.W.2d at 627.  But as discussed above, the Noncompete Agreement required concrete terms by which Gavaras could determine compliance.  The only Employment Proposal available is the initial one, as no further proposals or other documents were issued to alert Gavaras to the essential "terms of [his] written employment agreement."  Without written terms, Gavaras's noncompetition obligations become nonsensical and unenforceable.

Second, the Noncompete Agreement is invalid for other facial reasons.  The Noncompete Agreement has a blank next to the word "effective" that is not filled in.  Assuming this refers to a written agreement, a written agreement without an effective date is evidence that no written agreement exists.  The Noncompete Agreement also explicitly states Gavaras is barred from

working for any competitor of MN Monthly, but then specifically restricts Gavaras from working for MSP Communications, except if he is involuntarily terminated.  Strangely, the MSP Communications clause would allow Gavaras an avenue to work for MSP Communications that the general clause does not offer.  Without the general clause, Gavaras would be permitted to work for MSP Communications if he was involuntarily terminated.  But if Gavaras was involuntarily terminated under the general clause, then Gavaras could not work for MSP Communications because the general clause restricts <u>any</u> competition, regardless of whether Gavaras is involuntarily terminated or not.  This makes the MSP Communications clause meaningless if the general clause is credited.

Furthermore, the Noncompete Agreement does not circumscribe competing activities.  There is no definition of competing activities in the Noncompete Agreement or any other written agreement.  Nor does the Noncompete Agreement describe MN Monthly's competition.  Besides MSP Communications, the Noncompete Agreement leaves the employee guessing about what companies compete with MN Monthly in ways that come in conflict with the Noncompete Agreement.

Finally, Minnesota courts analyze the reasonableness of a covenant not to compete based on the nature and character of the employment, on the length of time the employee is restricted, and on its geographic limitations.  Regarding the last item, there is no geographic limitation in the Noncompete Agreement, which makes it potentially very broad.  As for the nature and character of the job Gavaras was hired to fill, if the Employment Proposal is Gavaras's job description for noncompetition purposes, it is impermissibly generic and broad.  Gavaras was hired to manage promotions, special events, and sales projects for the magazine.  The job from

this description appears to be sales and event coordinating: very broad responsibilities which, based on the Noncompete Agreement, could lead to very broad restrictions. The Employment Proposal and Noncompete Agreement together fail to put Gavaras on notice of what would constitute a breach, and it is not clear what Gavaras is restricted from doing.

For all these reasons, a declaratory judgment finding the Noncompete Agreement facially unenforceable is warranted.

## C. Blue-Pencil Doctrine

Hour argues the Court has discretion to "blue-pencil" the Noncompete Agreement to make the terms reasonable. Minnesota law does permit courts to modify a restrictive covenant to make its duration and territorial scope reasonable. Bess v. Bothman, 257 N.W.2d 791, 794-95 (Minn. 1977) (explaining the Minnesota Supreme Court's approach to the blue-pencil doctrine). Blue-penciling this restrictive covenant does not make sense. Modifying this agreement would require more than modifying the duration and territorial scope. The Court would need to rewrite the agreement wholesale, and rewriting would require the Court to divine the parties' intent at the time of contracting, seventeen years after the fact, and with a different employer. The Court declines to use the "blue-pencil" doctrine to modify the terms of the Noncompete Agreement.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Noncompete Agreement is **UNENFORCEABLE**; and,

2. Plaintiff's Motion for Temporary Restraining Order [Docket No. 4] is **DENIED** as moot.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 13, 2014.